**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**RICHARD JOE PRUITT, JR.,**

      **Plaintiff,**

**v.**                                        **Case No. 1:20cv228
                                                (Judge Kleeh)**

**FCI Morgantown; WARDEN GOMEZ; and
MEDICAL STAFF,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Introduction

On September 21, 2020, the *pro se* plaintiff, an inmate incarcerated at FCI Butner Low, in Butner, North Carolina, filed the instant Bivens[1] civil rights complaint. ECF No. 1. On September 23, 2020, the plaintiff was granted leave to proceed *in forma pauperis*; the initial partial filing fee was waived but he was assessed the full fee. ECF No. 7.

This matter is referred to the undersigned United States Magistrate Judge for submission of a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### II. Standard of Review

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B), the court is obliged to screen each case in which a plaintiff seeks to proceed *in forma pauperis*, and must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or

---

[1] Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 24 L. Ed.2d 619 (1971), which is the federal counterpart to a § 1983 action.

seeks monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 1915A, a similar screening is conducted where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A.[2]  A "frivolous" case has been defined as one which is based on an indisputably meritless legal theory.  Denton v. Hernandez, 504 U.S. 25 (1992).  A "frivolous" claim lacks "an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).

*Pro se* complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.  However, in Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Id. at 555.

The Supreme Court elaborated on its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case, writing:

> Two working principles underlie our decision in Twombly. First, the tenet that  a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [Twombly, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a

---

[2] The plaintiff is a prisoner who also seeks to proceed *in forma pauperis*.  Thus, both statutory provisions are applicable in this case.

plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556.

* * *

In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

Because the plaintiff's Complaint fails to state a claim upon which relief can be granted, the defendants have not been served with process and should not be required to appear or defend this matter.

### III. Plaintiff's Complaint

Plaintiff's complaint, which is no model of clarity, asserts that he was found guilty of a "100 series[3] Incident Report based on assumptions not facts which is a violation of my constitutional rights as stated in Part One (132) of the constitutional rights of prisoners."[4]  ECF No. 1 at 9. Plaintiff states that on an unspecified date,[5] while incarcerated at FCI Morgantown, apparently because of certain symptoms he was exhibiting,[6] his cell was searched, his property was confiscated, but "no drugs were found." Id. at 10.  He asserts that "'in section 9.1 Introduction:

---

[3] Plaintiff was apparently charged with Conduct Disruptive to the Orderly Operation of the Institution (Code 199), most like Use of Drugs or Narcotics (Code 112). See ECF No. 1 at 6.

[4] It is unclear what, specifically, what Plaintiff is referring to, by "Part one (132) of the constitutional rights of prisoners."

[5] While Plaintiff nowhere states what date the cell search and resultant disciplinary charge occurred, the copies of responses to his administrative grievance appeals indicate that the DHO's decision was rendered on June 20, 2019. See ECF No. 1 at 6, 7.

[6] Plaintiff impliedly suggests that he was found unconscious and with dilated pupils, prompting the search of his cell for drugs. See ECF No. 10 – 11.

of [sic] the constitutional rights of prisoners it states that [] due process must be upheld at all times.'" Id. He contends that he never received an administrative detention order telling him he was under investigation, and did not receive a copy of the Incident Report until "five days after the supposed incident and 50 hours after a supposed completed investigation [] [when] policy states staff had 24 hours to give me either a form stating I'm under investigation or an Incident Report." Id. He denies that he was seen by psychology for a personal evaluation and avers that he never received any sobriety tests other than a urine drug screen which he passed. Id. Further, he alleges that medical never examined him, checked his vital signs, or looked at his pupils to see if they were dilated. Id. He avers that he was taking Doxipan[7] [sic] 50 mg, "a psyc[h] med," at the time of the incident, and that Doxipan [sic] can cause certain side effects, including drowsiness, dizziness, trouble focusing, blurred vision, confusion, low sodium levels, headaches, memory problems, weakness, high or low blood pressure, balance problems, passing out, and/or seizures. Id. He contends that he had a "medical emergency" for which he was given no treatment, and instead, placed in a holding cell. Id. at 11. He also questions why, if there were no cameras in the halls, when a correctional officer called for backup for an unresponsive inmate, was a handheld camera not used to document what was happening. Id.

Plaintiff asserts that he has exhausted his administrative remedies and attaches copies of a response to a Regional Administrative Remedy Appeal [id. at 6] and a response to an appeal from the Administrator, National Inmate Appeals. Id. at 7.

---

[7] Doxepin is a tricyclic antidepressant. Its potential side effects are: nausea/vomiting; weakness or tiredness; dizziness; increase in pupil size; dry mouth; mouth sores; photosensitivity of skin; flushing; changes in appetite or weight; changes in the way things taste; indigestion; constipation; diarrhea; difficulty urinating; excessive thirst and urination; ringing in the ears; changes in sex drive; swollen testicles; increased breast size; milky discharge from nipples in females; excessive sweating; chills; headache; and hair loss. See Doxepin (Depression, Anxiety), *available at*: < https://medlineplus.gov/druginfo/meds/a682390.html#side-effects >

The plaintiff seeks injunctive relief in the form of the restoration of 71 days of Good Conduct Time ("GCT") and expungement of the Incident Report from his record, and unspecified monetary damages "for the sanctions I've served & [sic] for the negligence of staff due to a medical emergency[.]" Id. at 12.

## IV. Analysis

### Denial of Due Process Rights Claims

Plaintiff's complaint, liberally construed, appears to assert a denial of disciplinary due process in violation of his Fifth Amendment rights. Plaintiff alleges that his DHO decided the charges against him based on insufficient evidence, relying instead on assumptions and opinions by the reporting officers; Plaintiff also appears to imply that the DHO disregarded Plaintiff's offer of alternative evidence, i.e., that his symptoms could be attributed to the prescription drug he was taking at the time.

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections. U.S. CONST. amend. XIV. In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court set forth the requirements of due process in prison disciplinary hearings. An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 563-71. An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings. See Von Kahl, 855 F. Supp. 1413, 1418 (M.D. Pa.

1994)(citing <u>Wolff</u>, 418 U.S. at 563-72). However, in <u>Wolff</u>, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment. <u>Id</u>. at 556-57; <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3rd Cir. 1991).

The Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10, *et seq.* In particular, DHO hearing procedures are set forth at § 541.17. These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, §541.17(c);(d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d). The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions. 28 C.F.R. § 541.17(g). A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  <u>Id</u>.

These procedures are intended to meet or exceed the due process requirements prescribed by <u>Wolff</u>. <u>See</u> <u>Von Kahl</u>, 855 F. Supp. at 1418.

Here, liberally construed, Pruitt essentially contends that he was deprived of his due process right to introduce evidence pertaining to the symptoms he apparently was exhibiting on

the day his cell was searched for drugs. It appears from the rather unclear allegations in the complaint that Plaintiff alleges that his disciplinary hearing was decided on insufficient evidence. Pruitt appears to argue that the DHO was predisposed against him and did not consider the evidence Plaintiff implies that he offered as an alternative, to account for the symptoms he apparently exhibited that day, before making a predetermined finding of Plaintiff's guilt on the more serious disciplinary charges.[8] These allegations, if true, may be sufficient to show that plaintiff may have been denied procedural due process during his disciplinary hearings.

To the extent that there may have been a Wolff procedural violation, Plaintiff may bring a Bivens action for money damages stemming from the alleged denial of procedural due process, if the procedural protection is cognizable in a § 1983 or Bivens claim. See Wolff, *supra*; Henry v. Sanchez, 923 F. Supp. 1266,1270 (C.D. Calif. 1996). In Wolff, the Supreme Court held that, although claims for injunctive relief were barred by Preiser v. Rodriguez, 411 U.S. 475 (1973), plaintiffs were allowed to bring a damage claim because the claim was based on "damages for the deprivation of civil rights resulting from the use of the allegedly unconstitutional procedure." Sanchez, 923 F. Supp. At 1270. In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court reaffirmed this principle, stating that Wolff "recognized a Section 1983 claim for using the wrong procedures, not for reaching the wrong result . . . Thus, the claim at issue in Wolff did not call into question the lawfulness of plaintiff's continuing confinement." Heck, 512 U.S. at 482-83.

When an inmate is not afforded procedural protections to which he may be entitled, the district court must determine whether the denial of due process caused the resulting deprivations for which damages are sought. See Carey v. Piphus, 435 U.S. 247, 261 (1977). A plaintiff who

---

[8] Plaintiff apparently believed he should only have been charged with Possession of Tobacco (Code 331). See ECF No. 1 at 6.

brings a successful Bivens or § 1983 action based on a due process violation may be entitled to nominal damages even if there is no proof of actual injury. Carey, 435 U.S. at 266-67.

Here, however, even if this Court were to find that Plaintiff should have been afforded the opportunity to have his proffered evidence accepted, to result in having the hearing decided in his favor, or that the DHO or the Defendants were biased against him as he appears to allege, Pruitt is not simply challenging the constitutionality of the procedures used, but instead, is actually challenging the result of the disciplinary hearings. He seeks injunctive relief in the form of restoration of lost GCT and expungement of the Incident Report from his record, as well as money damages for the alleged due process violations. Thus, in essence, this action attempts to invalidate the prison disciplinary proceedings and the sanctions imposed (*inter alia*, resulting in the extension of his sentence by 71 days).

In Preiser, the Supreme Court held that a habeas petition is the proper mechanism for an inmate to challenge the "fact or duration" of his confinement. 411 U.S. at 498-99. The Court extended this ruling to include a challenge to prison disciplinary proceedings that affect the length of confinement, such as the deprivation or loss of good conduct time. Muhammad v. Close, 540 U.S. 749 (2004); Edwards v. Balisok, 520 U.S. 641 (1997).

In Edwards v. Balisok, the Supreme Court applied the lessons of Preiser and Heck[9] to a state prisoner action, seeking compensatory and punitive damages, challenging the

_____

[9] In Heck, the Supreme Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

8

constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits. Again, the Court emphasized that such a claim is not cognizable under § 1983[10] if a favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment. 520 U.S. at 646-8.

Here, it is clear that Plaintiff is challenging the result of his prison disciplinary proceedings, not simply the constitutionality of the procedures used during the proceedings. Plaintiff seeks his restoration of 71 days of GCT, which is § 2241 relief, together with an unspecified monetary settlement for the [other] sanctions" he served and for the "negligence of staff due to a medical emergency[.]" Clearly then, a favorable outcome on the damages claim would necessarily imply the invalidity of the prison disciplinary finding and sanctions.

Consequently, Plaintiff's damages claim cannot proceed until such time as the disciplinary finding is invalidated through habeas corpus or some other appropriate means.

Therefore, this denial of disciplinary due process claim will be dismissed without prejudice. To the extent that Plaintiff seeks to challenge the loss of 71 days of GCT, he must file a habeas petition under 28 U.S.C. § 2241.

Finally, to the extent that Plaintiff is asserting a claim that he was falsely charged with a disciplinary infraction he did not commit, such claim is also subject to dismissal. In this case, the responses to his administrative remedy appeals indicate that Plaintiff alleges that the incident report was fabricated and that he was the victim of retaliation by the reporting officer, based on

---

512 U.S. at 486-87 (footnote omitted). The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment. 512 U.S. at 487.

[10] Case law under 42 U.S.C. §1983 is applicable to <u>Bivens</u> actions. <u>See</u> <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978).

the motive of Plaintiff's having previously made a claim under the Prison Rape Elimination Act ("PREA"). See ECF No. 1 at 6, 7.  It was noted that Plaintiff had not raised this allegation at any previous stage of the discipline process. Id.

Nonetheless, the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. See Freeman v. Rideout, 808 F.2d 949, 952-53 (2nd Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"),cert. denied, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff, 418 U.S. at 558, then the prisoner has not suffered a constitutional violation). See Richardson v. Smith, No. 2:14-cv-64, 2015 WL 9875842, *10, Aloi, M.J.  (N.D. W.Va. Nov. 2, 2015) ("In addition, plaintiff does not have a constitutional right to be free from false disciplinary reports.") adopted by Richardson v. Smith, 2016 WL 237125, Bailey, J. (N.D. W.Va. Jan. 20, 2016). "The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights." Lewis v. Viton, 07-3663, 2007 WL 2362587 * 9 (D.N.J. Aug. 14, 2007) (citing Freeman v. Rideout, 808 F.2d 949, 962-53 (2nd Cir. 1986)). There is simply no constitutional right to be free from being falsely accused. See McClary v. Fowlkes, 1:07cv1080 (LO/TCB), 2008 WL 3992637 *4 n.6 (E.D. Va. Aug. 27, 2008) ("To the extent that plaintiff claims that he was falsely accused, he fails to state a § 1983 claim because '[t]he prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'") (internal citations omitted); Anderson v. Green, 2009 WL 2711885*4, Civil Action No. AMD-08-2708 (D. Md. Aug. 24, 2009) (same); Riggleman v. Ziegler, No. 5:11-cv-0868, 2012 WL 4119674 * 5, Van Dervort, M.J. (S.D.

W.Va. Aug. 22, 2012) (inmates have no constitutional right prohibiting false charges against them).

## Medical Negligence

To the extent that Plaintiff may be seeking to establish a medical negligence claim against any of the Defendants, for not providing him treatment when on the  day he exhibited symptoms of a possible drug overdose, the same is not cognizable under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 105-106 (1976).  Moreover, even if such a claim were cognizable, in order to sustain such a claim, Plaintiff would have had to comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

Further, when a medical negligence claim involves an assessment of whether or not a plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000). Under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code § 55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6**. Prerequisites for filing an action against a health care provider; procedures; sanctions.
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
>  (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return

11

receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the Rules of Civil Procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp. 2d 805, 806-807 (N.D. W.Va. 2004).

With regard to the appropriate standard of care, Plaintiff has not sustained his burden of proof. Plaintiff does not assert, much less establish, the standard of care for being found unresponsive with dilated pupils.  Further, even if such a claim were cognizable in a Bivens action, this is not a case of alleged malpractice so obvious that it entitles Plaintiff to the common knowledge exception of W.Va. Code § 55-7B-6(c). Thus, any possible medical negligence claim must be dismissed without prejudice.

## V. Recommendation

For the reasons stated herein, the undersigned **RECOMMENDS** that the plaintiff's Complaint [ECF No. 1] be **DISMISSED without prejudice for failure to state a claim upon which relief can be granted**, pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B) and 1915A.

**Within 14 days** of service of this Report and Recommendation, the plaintiff may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and**

Recommendation to which objection is made, and the basis of such objection. A copy of such objections should also be submitted to United States District Judge Thomas S. Kleeh. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket.

In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: September 28, 2020

/s *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE